IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRUC BA TRINH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:25-CV-06037-ELR-JEM |
| | * | |
| GEORGE STERLING, Field Office Director of ICE Atlanta Field Office, TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement, KRISTI NOEM, Secretary of Homeland Security, and PAMELA BONDI, U.S. Attorney General, | * * * * * * * * * | |
| Defendants. | * * | |

_____

**ORDER**

_____

On October 29, 2025, the Court ordered the Parties to file briefs addressing the discreet jurisdictional issue identified. [Doc. 12]. The Parties have timely briefed the issue. [Docs. 17, 18]. Having considered the evidence and arguments presented by the Parties, the undersigned is persuaded that under the immediate custodian rule, this Court lacks jurisdiction to hear Petitioner Truc Ba Trinh's habeas petition and that the transfer of this action to the U.S. District Court for the Middle District of Georgia is warranted.

In this action pursuant to 28 U.S.C. § 2241, Trinh, a Vietnamese national whose removal was deferred and who has lived in the United States for over 20 years under an Order of Supervision ("OSUP"), challenges the lawfulness of his ongoing detention by U.S. Immigration and Customs Enforcement (ICE). On October 17, 2025, ICE detained Trinh when he reported to the ICE Atlanta Field Office at 180 Ted Turner Drive, SW, Atlanta, Georgia, ("Atlanta Field Office") for a routine check-in appointment in compliance with his OSUP. Pet. ¶ 3 [Doc. 1]. According to Jeffrey Knowles, Deportation Officer for the ICE/Enforcement and Removal Operations (ERO) Field Office at Stewart Detention Center (SDC) in Lumpkin, Georgia, ICE transferred Trinh to SDC on October 21, 2025. 2d. Decl. of ICE/ERO Detention Officer Jeffrey Knowles ("2d. Knowles Decl.") ¶ 4 [Doc. 18-1].[1]

As of 3:57 p.m. on October 21, 2025, the ICE detainee records locator webpage ("Detainee Locator") simply indicated that Trinh was in ICE custody; it did not show Trinh's location. [Doc. 1-1]. After last checking the Detainee Locator at 3:57 p.m., at 11:23 p.m. on October 21, 2025, Trinh's counsel electronically filed the Petition on this Court's case management system, representing that Trinh was in ICE custody at an unknown location. Pet. ¶ 1; see Decl. of Karen Weinstock, Petitioner's Atty. of Record ("Weinstock Decl.") ¶ 2 [Doc. 13]; [see also Doc. 13-1].

---

[1] The record also includes another, earlier filed declaration of Detention Officer Knowles. [Doc. 10-1]. The Court refers to that earlier filed declaration, [Doc. 10-1], as "1st Knowles Decl."

Sixty-five minutes before Trinh's counsel filed the Petition, at 10:18 p.m., Trinh was booked into SDC. 2d. Knowles Decl. ¶¶ 4–5.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242) (cleaned up). The Padilla Court reaffirmed that "[i]n challenges to present physical confinement, . . . the immediate custodian[, i.e., "the warden of the facility where the prisoner is being held"], not a supervisory official who exercises legal control, is the proper respondent." 542 U.S. at 436, 439. This "immediate custodian rule" together with § 2241(a)'s "proviso that district courts may issue the writ only 'within their respective jurisdictions'" gives rise to the "simple rule" that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." Id. at 446–47. And the courts in this District "consistently appl[y]" the immediate custodian rule to habeas petitions challenging detention in advance of removal from United States. Singh v. Wolf, No. 20-CV-02212, 2020 WL 13544296, at *1 (N.D. Ga. July 30, 2020).

Trinh argues that three exceptions to the immediate-custodian and district-of-confinement rules apply here. [Doc. 17 at 3–5]. First, Trinh asserts that ICE did not transfer him to SDC until *after* he filed the Petition, this Court retains

3

jurisdiction although he is no longer confined in this District and the Director of the ICE Atlanta Field Office is no longer his immediate custodian. [Id. at 3–4]. "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." Padilla, 542 U.S. at 441. But, as in Padilla, this proposition does not help Trinh. He "was moved from [this District] to [the Middle District of Georgia] before his lawyer filed a habeas petition on his behalf. . . . [And], therefore, the [Nor]thern District never acquired jurisdiction over [Trinh]'s petition." Id.

Trinh submits the declarations of two paralegals who state that they contacted SDC to learn when Trinh "entered the facility" and relay that he was "processed into [the SDC] facility on October 21, 2025, at 23:42." Decl. of Claudia Cantu ("Cantu Decl.") ¶¶ 2–3 [Doc. 17-1]; Decl. of Yareli Vera ("Vera Decl.") ¶¶ 2–3 [Doc. 17-2].[2] Based on this, Trinh argues that he remained in the custody of Respondent George Sterling, Director of the ICE Atlanta Field Office, until 11:42 p.m., 19 minutes after he filed his Petition, and thus his Petition was properly filed in this Court against his then-immediate custodian. [Doc. 17 at 5–6].

---

[2] Trinh also submits an audio recording of a phone conversation with an unidentified individual at SDC, [see Doc. 16], during which the individual is asked to confirm the time of Trinh's processing at SDC and responds "102125" and "2342."

4

The Court is not persuaded. ICE records show that Trinh was "booked out" from the Atlanta Field Office at 4:25 p.m. on October 21, 2025, and "booked into" SDC at 10:18 pm that same day. [Doc. 18-1 at 4]. Detention Officer Knowles explains that after a detainee arrives at SDC, an ICE official records the detainee's arrival in an ICE database as the "Book In Date/Time," which for Trinh was "10/21/2025 2218." 2d. Knowles Decl. ¶ 5. He further explains that an arriving detainee is taken to an intake area where an SDC detention officer observes the detainee's health condition and CoreCivic, the contractor operating and managing SDC, administratively processes the detainee. Id. ¶ 6. Here, an ICE detention officer at SDC booked in Trinh and recorded his health condition at 11:18 p.m. This shows that Trinh had arrived at SDC and was in ICE custody there, rather than in the custody of the Atlanta Field Office, by that time. While CoreCivic staff may not have completed administratively processing Trinh until later, this does not necessitate the conclusion that he remained in the custody of the Atlanta Field Office until CoreCivic finished processing him. The fact remains that Trinh was at SDC, in the Middle District of Georgia, and the warden of that facility was his immediate custodian when his counsel filed the Petition naming the Atlanta Field Office Director in this Court. Thus, this Court lacks jurisdiction to issue the writ that Trinh's Petition seeks.

Trinh's alternative argument that the "unknown custodian" and "undisclosed location" exception applies is equally unpersuasive. Relying on the absence of his location information on the Detainee Locator, Trinh contends that Respondents concealed his location until after he was transferred to their preferred forum. [Doc. 17 at 7]. Thus, Trinh argues, his Petition was properly filed in his "last-known location against [his] ultimate custodian." [Id. at 4, (quoting Suri v. Trump, No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025)).

"When . . . a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." Padilla, 542 U.S. at 450 n.18. But it is not "impossible to apply" these rules in Trinh's case. ICE did not detain Trinh in an undisclosed location. Rather, before his transfer to SDC on the same day that counsel filed Trinh's petition, Trinh remained detained at the Atlanta Field Office where he had reported for his routine OSUP check-in. According to the statement of Trinh's counsel during the October 28, 2025 hearing in this matter, Trinh's family was in contact with Trinh and relayed to his counsel that his transfer was imminent. While counsel may not have been aware that Trinh had been transferred to SDC, nothing in the record indicates that Respondents kept Trinh's location confidential. See Demjanjuk v. Meese, 784 F.2d 1114, 1115–16 (D.C. Cir. 1986) (waiving the immediate custodian rule under "very limited and special circumstances" where the detainee was in

custody "in a confidential location," it would be "inappropriate to order the whereabouts of the petitioner made public," and, thus, "petitioner's attorneys cannot be expected to file in the jurisdiction where petitioner is held"). Moreover, nothing in the record indicates that Trinh's counsel, who was aware that ICE detained Trinh during his check-in at the Atlanta Field Office and who considered it "highly possible" that ICE was detaining him there, Pet. ¶¶ 2, 6, 19, 21, 23, 37, could not have learned Trinh's whereabouts by inquiring at the Atlanta Field Office.

Nor was Trinh's immediate custodian "unknowable to all" such that it was "impossible to apply" the immediate custodian rule. See Suri v. Trump, 785 F. Supp. 3d 128, 141–42 (E.D. Va. 2025) (applying an exception to the immediate custodian rule because "[n]ot only was Petitioner's immediate custodian unknown to his counsel at the time of filing his petition," he "did not have an immediate custodian [when the petition was filed] because he was not yet booked into any detention facility," and even the Government could not identify his custodian at that time). As Respondents correctly note, Trinh was in SDC custody when the Petition was filed, and it is not "impossible" to identify who his immediate custodian was at that time. [Doc. 18 at 6].

Equally unavailing is Trinh's final argument that the Court should not apply the immediate custodian rule here because ICE "was not forthcoming" about his detention location and custodian's identity and transferred him to "make it difficult

7

for his lawyer to know where the habeas petition should be filed." [Doc. 17 at 8 (quoting Padilla, 542 U.S. at 454 (Kennedy, J., concurring))]. Even assuming that this exception "is the law of the land," it "would not aid" Trinh. Khalil v. Joyce, 771 F. Supp. 3d 268, 273–74 (S.D.N.Y. 2025) (questioning whether Justice Kennedy's exception is a "recognized" one). As evidence of Respondents' bad-faith motive, Trinh points to ICE's failure to update his location on the Detainee Locator for the four days before his transfer to SDC. But the "delay in updating the online Detainee Locator, without more, is not enough to support an inference of Government secrecy." Khalil, 771 F. Supp. 3d at 285–86 (cleaned up). Also, it appears that Trinh's family was in contact with him before his transfer, making it likely that Trinh had relayed his whereabouts to them. And there is no indication in the record that counsel contacted that Field Office to inquire about Trinh's location but was denied that information. Thus, it is a tough sell to say that Respondents shrouded Trinh's location and his custodian's identity in secrecy.

Finally, although the Detainee Locator may not have reflected Trinh's transfer to SDC until after counsel filed his Petition, it is not reasonable to read into this delay a motive to thwart counsel's efforts to secure a forum with jurisdiction to grant the habeas writ. In contrast, Respondents extend a reasonable explanation; ICE transferred Trinh out of this District four days after his detention "because there are

8

no long-term immigration detention facilities in the Northern District of Georgia." 1st Knowles Decl. ¶ 5.

In sum, the Court agrees with Respondents that it lacks jurisdiction over Trinh's Petition because it does not name his immediate custodian and was not filed in his district of confinement. Respondents request that the Court transfer this case to the U.S. District Court for the Middle District of Georgia. [Doc. 18 at 9–10]. Under the circumstances, the Court agrees that a transfer, rather than a dismissal, is appropriate. See Khalil, 771 F. Supp. 3d at 288 (transferring case to the district court in the district where the petitioner was detained at the time he filed his habeas petition).

For the above-mentioned reasons, this Court lacks jurisdiction over Trinh's Petition. [Doc. 1]. The Court **TRANSFERS** this case to the U.S. District Court for the Middle District of Georgia, as Trinh was in ICE custody at the Stewart Detention Center in Lumpkin, Georgia, when he filed his Petition.

**SO ORDERED**, this 10th day of November, 2025.

_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia

9